## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

KIRAN VUPPALA, on behalf of himself
and all persons similarly situated,

     Plaintiff,

vs.

UBER TECHNOLOGIES, INC.,
a Delaware corporation,

     Defendant.

_____/

CASE NO: 15-cv-6247


**CLASS ACTION
COMPLAINT**


In this class action, plaintiff, KIRAN VUPPALA (hereinafter, the "Plaintiff"), on behalf of himself and all persons similarly situated, by and through his undersigned counsel, hereby files this Class Action Complaint and sues UBER TECHNOLOGIES, INC., a Delaware corporation, d/b/a UBER (hereinafter, the "Defendant" or "UBER"), and in support thereof states as follows:

### JURISDICTION AND PARTIES

1.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §12181, et. seq., ("ADA"). Plaintiff also seeks declaratory relief, injunctive relief, and compensatory damages pursuant to the New York City Human Rights Law ("NYCHRL"). This Court is vested with original jurisdiction under 28 U.S.C. §1331 and §343.

2.     Venue is proper in this Court, pursuant to 28 U.S.C. §1391(B) in that all events giving rise to this lawsuit occurred in the State of New York, County of New York, borough of Manhattan.

3.      The remedies provided by the NYCHRL are not exclusive and state administrative remedies need not be exhausted in connection with suits brought under the ADA or the NYCHRL.

4.      Plaintiff suffers from what constitutes a "qualified disability" under the ADA, is a paraplegic, and uses a power wheelchair for mobility.  The Plaintiff works on a weekly basis in the borough of Manhattan, desires to use the services of UBER in the borough of Manhattan, but is denied full and equal access to, and full and equal enjoyment and services of UBER, in the borough of Manhattan.

5.      The Defendant is a foreign corporation, organized under the laws of the State of Delaware, with its principal place of business located in San Francisco, California, and is authorized to conduct, and conducts business within the State of New York, including the City of New York.

6.      All events giving rise to this lawsuit occurred in the borough of Manhattan with the City of New York, State of New York.

**CLASS ACTION ALLEGATIONS**

7.      Plaintiff brings this action for injunctive and declaratory relief on his own behalf, and on behalf of all persons similarly situated, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.  Plaintiff seeks to represent a class that consists of disabled persons who utilize a wheelchair for mobility, who desire to, but have been unable to, use UBER's services in the borough of Manhattan (hereinafter and heretofore, for purposes of this action, Manhattan is defined as, and limited to, below 110th Street on the West Side/Below 96th Street on the East Side of Manhattan) due to UBER's lack of accessible vehicles in the borough of Manhattan and/or are being denied the full and

2

equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations and programs or activities of Defendant, including, but not limited to, different class/tier options of vehicles.

8.      Plaintiff alleges that the proposed class consists of thousands of disabled persons, who utilize a wheelchair for mobility and are residing and/or working and/or commuting within and/or from, the borough of Manhattan (as defined herein), New York's most densely populated borough and UBER's top market.  The proposed class is so numerous that joinder of all such persons is impracticable. The disposition of their claims in a class action is a benefit to the parties and to the Court.

9.      There is a well-defined community of interest in the questions of law and fact involved and affecting Plaintiff in that they are being denied equal access to UBER's services in the borough of Manhattan.

10.     There are questions of law and fact common to all class members that include, but are not limited to:

(i) Whether UBER has failed to offer requisite accessible transportation services in the borough of Manhattan, where access is readily achievable.

(ii) Whether UBER has failed to offer different class/tiers of accessible vehicles in the borough of Manhattan.

(iii) Whether UBER has failed to make modifications to policies, practices, and procedures in a manner that deprives disabled persons, who utilize a wheelchair for mobility, the requisite full and equal enjoyment of its services, privileges, advantages, and/or accommodations, in the borough of Manhattan (as defined herein), which are available to non-disabled persons.

3

(iv) Whether UBER has failed to take the steps necessary to ensure that disabled persons, who utilize a wheelchair for mobility, are not provided inferior UBER services in the borough of Manhattan.

(v) Whether UBER has denied Plaintiff, and the proposed class, "meaningful access" to its services in the borough of Manhattan.

11.     There are questions of law and fact common to all class members that include, but are not limited to, the common questions raised by the Plaintiff which are capable of class-wide resolution.

12.     Plaintiff's claims are typical of the claims of all members of the class because they arise from the same discriminatory course of conduct by UBER. UBER has acted, and continues to act, on grounds generally applicable to all class members, thereby making final declaratory and injunctive relief appropriate to the class as a whole. The form and scope of the injunctive and declaratory relief sought is common to all members of the class.

13.     Plaintiff is an adequate representative because, like the class of disabled persons who utilize a wheelchair in Manhattan, he is directly impacted by UBER's failure to provide the requisite full and equal access to their services. The interests of the Plaintiff are not antagonistic to, or in conflict with, the interests of the class as a whole. The undersigned counsel representing the class is highly experienced in ADA related actions, and has been lead counsel in hundreds of ADA related discrimination cases in the Southern District of New York and other jurisdictions.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

14.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 13 as if set forth in their entirety here.

15.     On or about July 26, 1990, Congress enacted the ADA, 42 U.S.C. § 12101, et seq.   Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements.   The effective date of the Title III of the ADA was January 26, 1992.   42 U.S.C. § 12181; 20 C.F.R. § 36.508(a), and recently supplemented in 2010.

16.     Congress found, among other things, that:

(i)      some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

(ii)      historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

(iii)      discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, institutionalization, health services, voting and access to public services and public facilities;

(iv)      individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices. Exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, benefits, or other opportunities; and,

(v)      the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and

costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1)-(3), (5) and (9).

17.     Congress explicitly stated that the purpose of the ADA was to:

(i)      provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)     provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

(iii)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

18.     Pursuant to 42 U.S.C. §12181(7) and 28 C.F.R. §36.104, UBER is a place of public accommodation in that it is a transportation service, with "for hire" vehicle drivers (regulated by the TLC), that provides services to the public.

19.     In the City of New York, there are currently approximately 14,000 registered UBER vehicles offering services to the public, even outnumbering the amount of New York City's medallion yellow taxis.  All UBER car drivers, in the City of New York (including the borough of Manhattan), are deemed "for hire vehicle drivers" and, consequently, are required to be licensed as "For Hire Vehicle Driver[s]" with the New York City Taxi and Limousine Commission (the "TLC"), obtain a "For-Hire Vehicle License" from the TLC, possess a Class E or CDL driver's license, undergo specific training, be commercially insured, and have TLC license plates on their UBER service

vehicles. UBER's services with "for hire drivers", are clearly serving the public, and, therefore, are subject to the ADA, the NYCHRL, and other similar laws specified herein.

20.     UBER also engages in a demand responsive system, through its 'app' based system, as defined by 42 U.S.C. § 12181.

21.     The ADA provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce.  42 U.S.C. §12184(a).

22.     Further, the regulations promulgated to enforce the ADA, by the United States Secretary of Transportation provide that private entities providing taxi service shall not discriminate against individuals with disabilities by actions including, but not limited to, refusing to provide sufficient service to individuals with disabilities who can use taxi vehicles, refusing to assist with the stowing of mobility devices, and charging higher fares or fees for carrying individuals with disabilities and their equipment than are charged to other persons.  49 CFR § 37.29.  UBER services with "for hire vehicle drivers" would certainly be included in this category, as defined above.

23.     UBER began operations since January 26, 1990, and has sufficient income to make readily achievable accommodations to become accessible in the borough of Manhattan, with a current extraordinary valuation of approximately $50,000,000,000 (fifty billion dollars).

24.     UBER has failed to provide a mechanism by which to adequately serve disabled persons who utilize a motorized wheelchair, such as the Plaintiff and other members of the class, in the borough of Manhattan.  For example, UBER's recent "UberWAV" option, which UBER primarily outsources to the green 'Boro' taxis (which are

not permitted to pickup passengers in the borough of Manhattan as defined herein) which can only be utilized to request a wheelchair accessible UBER vehicle pickup in New York City's outer boroughs, but do not provide the same requisite service in the borough of Manhattan (as defined herein).  In addition, passengers must pay said green 'Boro' taxis separately, and not through their UBER (credit card funded) account, in contrast to non-disabled passengers. Notwithstanding, said "UberWAV" option also does not permit wheelchair users to select different classes/tiers of vehicles, as non-disabled persons are easily able to do through their app-based system.

25.    Defendants have discriminated, and continue to discriminate, against the Plaintiff who utilizes a motorized wheelchair, and other similarly situated member of the class, by denying full and equal access to, and full and equal enjoyment of UBER's services in the borough of Manhattan, in derogation of 42 U.S.C. §12101, et. seq., and as prohibited by 42 U.S.C. §12182, et. seq., where such accessible accommodation is readily achievable.

26.    The Plaintiff has been unable to, and continues to be unable to, enjoy full and equal safe access to, and the benefits of, all the services offered by UBER in the borough of Manhattan.

27.    Prior to the filing of this lawsuit, Plaintiff desired and attempted to use UBER's services, with his motorized wheelchair, in the borough of Manhattan, but was unable to utilize UBER's service since they do not provide the requisite wheelchair accessible vehicles in the borough of Manhattan (as defined herein), and has therefore suffered an injury in fact.  Based on information, and belief, many other similarly situated disabled persons, who utilize a wheelchair in the borough of Manhattan, have suffered similar injuries in fact.

28.     Plaintiff intends to immediately use UBER's services in the borough of Manhattan as soon as it is made accessible to him, but continues to be injured in that he is unable to use UBER's services in the borough of Manhattan, and continues to be discriminated against, due to UBER's lack of requisite accessible vehicles in the borough of Manhattan for disabled persons who utilize a wheelchair, all in violation of the ADA, the NYCHRL, and other similar laws stated herein.

29.     Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the Americans with Disabilities Act Accessibility Guidelines (hereinafter "ADAAG"), 28 C.F.R. Part 36, under which said Department may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

30.     Defendant UBER is in violation of 42 U.S.C. §12181, et. seq., the ADA, and specifically 28 C.F.R. § 36.201, 28 C.F.R. § 36.202, 28 C.F.R. § 36.302, 42 C.F.R. § 12184, 49 C.F.R. § 37.5, 49 C.F.R. § 37.21, 49 C.F.R. § 37.29, 49 C.F.R. § 37.167, et. seq., and NYCHRL, and continues to discriminate against the Plaintiff, and other similarly situated members of the class, as a result of inter alia, its failure to provide the requisite accessible UBER services in the borough of Manhattan accessible to disabled individuals who utilize wheelchairs like the Plaintiff, and other similarly situated members of the class.

31.     To date, UBER is not sufficiently accessible, in the borough of Manhattan, to disabled individuals who utilize wheelchairs like as the Plaintiff, and other similarly

situated members of the class, the accommodation of which is readily achievable, especially given UBER's extraordinary financial resources.

32.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant the Plaintiff, and other similarly situated members of the class, injunctive relief; including an order to make UBER's services accessible to, and useable by, individuals with disabilities who utilize wheelchairs, in the borough of Manhattan (as defined herein), to the full extent required by the ADA.

## COUNT II - VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW

33.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 13 as if set forth in their entirety here.

34.     The NYCHRL provides:

> It shall be an unlawful discriminatory practice for any person, being the owner … agent or employee of any ... provider of public accommodation because of the actual or perceived … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of … disability …

NYC Admin. Code § 8-107(4)(a).

35.     Defendant UBER is in violation of the NYCHRL by denying Plaintiff, and other similarly situated members of the class, all of the equal services, privileges and/or benefits of UBER's services in the borough of Manhattan.

36.     Plaintiff, and each member of the class, is entitled to an award of reasonable compensatory damages against UBER pursuant to the NYCHRL.

**ATTORNEYS FEES, COSTS and DAMAGES**

37.     Plaintiff, and other similarly situated members of the class, has been obligated to retain the undersigned counsel for the filing and prosecution of this action. The Plaintiff, and other similarly situated members of the class, is entitled to have their reasonable attorneys fees, costs and expenses paid by the Defendant, pursuant to the ADA, the NYCHRL, and other similar laws stated herein.

38.     Plaintiff prays for judgment pursuant to the ADA, including 28 C.F.R. § 36.201, 28 C.F.R. § 36.202, 28 C.F.R. § 36.302, 42 C.F.R. § 12184, 49 C.F.R. § 37.5, 49 C.F.R. § 37.21, 49 C.F.R. § 37.29, 49 C.F.R. § 37.167, and for reasonable compensatory damages pursuant to the NYCHRL for the Plaintiff and other similarly situated members of the class.

**INJUNCTIVE RELIEF**

39.     Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant the Plaintiff, and other similarly situated members of the class, injunctive relief; including an order to make UBER accessible to, and useable by, individuals with disabilities who utilize wheelchairs, such as the Plaintiff and other similarly situated members of the class, in the borough of Manhattan, to the full extent required by the ADA, and the NYCHRL, and other similar laws stated herein.

WHEREFORE, the Plaintiff hereby demands judgment against Defendant UBER, and requests the following injunctive and declaratory relief:

A.     That this matter be certified as a class action with the class defined as disabled persons who utilize a wheelchair in the borough of Manhattan (as defined herein), that the Plaintiff be appointed class representative, and

that Plaintiff's undersigned counsel and law firm be appointed class counsel.

B.      The Court declares that UBER is violative of the ADA, the NYCHRL, and other similar laws stated herein, in the borough of Manhattan (as defined herein);

C.      The Court enter an Order requiring the Defendant to make UBER's services accessible in the borough of Manhattan (as defined herein) to, and useable by, individuals with disabilities who utilize a wheelchair in the borough of Manhattan, such as the Plaintiff and other similarly situated members of the class, to the full extent required by the Title III of the ADA, the NYCHRL, and other similar laws stated herein;

D.      The Court enter an Order directing UBER to evaluate and neutralize their discriminatory policies, practices and procedures toward persons with disabilities, in the borough of Manhattan (as defined herein);

E.      The Court award Plaintiff's, and other class members, reasonable attorneys fees, costs, including, but not limited to court costs and expert fees, and other expenses of lawsuit;

F.      The Court award reasonable compensatory damages pursuant to the NYCHRL for the Plaintiff and other similarly situated members of the class; and

G.      The Court award such other and further relief as it deems necessary, just and proper.

Dated: This 7th day of August, 2015.

Respectfully submitted,

By: /s/ B. Bradley Weitz, Esq.
    B. Bradley Weitz, Esq. (BW 9365)
    THE WEITZ LAW FIRM, P.A.
    Bank of America Building
    18305 Biscayne Blvd., Suite 214
    Aventura, Florida 33160
    Telephone: (305) 949-7777
    Facsimile:  (305) 704-3877
    Email: BBW@WeitzFirm.com